Charles D. Marshall (State Bar No. 236444)
**MARSHALL LAW FIRM**
2121 N. California Blvd., Suite 290
Walnut Creek, CA  94596
Telephone: (925) 575-7105
Facsimile: (855) 575-7105
cdm@marshall-law-firm.com

Jeremy M. Glapion
(*Pro Hac Vice* to be submitted)
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: (732) 455-9737
Fax: (732) 709-5150
jmg@glapionlaw.com

Attorneys for BRADLEY LA FORCE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BRADLEY LA FORCE**, <br><br> Plaintiff, <br><br> v. <br><br> **GOSMITH, INC,** and DOES 1-25 <br><br> Defendant. | Civil Case No.: 3:17cv5101 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Plaintiff Bradley La Force ("Plaintiff") brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from Defendant GoSmith, Inc.'s ("GoSmith" or "Defendant") practice of sending autodialed text messages to his cellular telephone without consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it resides in this district.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is also proper because Defendant resides in this district.

## PARTIES

4. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of New York.

5. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

6. Defendant GoSmith, Inc. is and at all times mentioned herein was, a corporation duly organized under the laws of the State of Delaware with its headquarters in Menlo Park, California.

7. Defendant GoSmith, Inc. is and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

8. Does 1-25 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

## FACTUAL ALLEGATIONS

9. Defendant GoSmith is a lead generation company that, among other things, sends text messages to contractors substantially in the form of "[Person] is in

need of [Service]. You have 1st priority. Reply 1 if interested, 3 if not."

10. These text messages are automated, as indicated by the fact each message is nearly identical, as well as the ability to automatically express interest or disinterest through an automated "Reply 1 [or] 3" process.

11. When a person replies "3" for "not interested", Defendant's automated system replies "let's make sure we match you with the right projects. Text 4 if wrong trade types. 5 if wrong service area, 6 if you're busy, 9 to stop."

12. When a person replies 9, Defendant's automated system replies "Okay, we'll pause sending notices of new projects for 7 days. If you wish to unsubscribe and stop all messages, reply STOP."

13. This flow and automated interaction/response indicates that the texts are automated.

14. If a recipient wants to act on the lead Defendant sends, they are required to purchase "credits" from Defendant.

15. Accordingly, Defendant is attempting to sell its services with each text message. This makes Defendant's text messages telemarketing.

16. Accordingly, Defendant needed prior express written consent from the persons to whom it was sending its text messages.

17. "Prior express written consent" is specifically defined by statute as:

> [A]n agreement, in writing, bearing the signature of the person called <u>that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice</u>, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

18. Defendant had no such consent from Plaintiff.

19. First, Defendant is not in the business of obtaining "prior express

3

written consent" to send its autodialed text messages.

20. On its sign-up page for "Pros" (i.e. contractors), it requests information such as name, location, and phone number.

21. There is no disclosure on this page of the possibility of autodialed text messages.

22. Immediately below the form is a bright green "SIGN UP" bar. Clicking that, after filling in the information, will complete the sign-up process.

23. Below this sign-up bar in small print is a check box next to "I have read and agree to the terms & privacy policy. Msg & data rates may apply." "Terms", "Privacy Policy", and "Msg" are hyperlinks.

24. Remarkably, the check box is *checked by default*. In other words, someone signing up does not need to affirmatively agree to the terms; Defendant has pre-filled the check box so that clicking "sign up" will sign the person up, even if they never clicked the box or even saw the box (since it was below the "SIGN UP" bar).

25. Thus, while the "Terms" appear to contain authorization to send autodialed text messages, Defendant's deceptive sign up process (placing the "I agree" box in small print below the sign ups box and pre-checking the box intended to show agreement) render the terms meaningless, and certainly not "prior express written consent."

26. Second, Plaintiff never signed up for Defendant's services or provided Defendant with his information.

27. Nevertheless, Defendant sent dozens, if not hundreds, of text messages to Defendant's cellular telephone number in 8848.

28. These text messages continued despite Plaintiff's best efforts to stop them.

4

29. While the messages initially came from "short code" telephone numbers, they eventually began to come from 10-digit telephone numbers.

30. On numerous occasions, Plaintiff called back these numbers and requested to be placed on Defendant's "do not call" list.

31. Plaintiff also went through the process described in paragraphs 11-12 above – he replied with 3 to say not interested, 9 to stop, and "STOP" to end the text messages for good, and the text messages continued.

32. Notwithstanding the absurdity of Defendant's multi-layered and incremental opt-out process, Defendant even sent a text to Plaintiff after he said "STOP" to ask "why [he's] not interested? There's no monthly fee, and you can give quote online for free. It is only a small fee for a guaranteed appointment."

33. Plaintiff did not respond, and Defendant started up its usual lead generation texts the following day.

34. Text messages are considered "calls" under the TCPA. *See, e.g.* 2003 FCC Order, 18 FCC Rcd. 14014, ¶ 165; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1003 (N.D. Ill. 2010).

35. Defendant never had Plaintiff's prior express written consent to send him text messages, and further, Plaintiff revoked, on numerous occasions, any consent Defendant believed it had.

36. It has long been held that a consumer can revoke his or her consent to receive text messages – especially if the opt-out is done in writing such as through a responsive text message. *See, e.g. SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (Nov. 26, 2012) (confirming that an entity may only send an opt-out confirmation text after the consumer has revoked his or her consent to receive further

text messages); *Gonnella v. Delbert Servs. Corp.*, Case No. 14-cv-4921, 2015 U.S. Dist. LEXIS 34465, *9-11 (N.D. Ill. Mar. 19, 2015).

37. Nonetheless, Defendant sent and continued to send automated text messages to Plaintiff's cellular telephone.

38. The text messages were not sent for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

39. Accordingly, Defendant's text messages to Plaintiff violated the TCPA.

40. Plaintiff has suffered injury-in-fact as a result of Defendant's telephone calls, including, but not limited to:

   a) Device storage. Text messages necessarily take up storage space on cellular telephones and because Defendant's text messages did so without prior express consent, they constitute concrete injury;

   b) Lost time reading, tending to and responding to the unsolicited texts, and deleting the unwanted texts. The time spent reading, addressing, and deleting unsolicited text messages is concrete injury;

   c) Invasion of Privacy. Defendant's continued contact after asking Defendant to stop contact is both a nuisance and an invasion of Plaintiff's privacy, and constitutes concrete injury.

41. These injuries are both particularized (in that they each affect plaintiff in a personal and individual way) and concrete (in that the above harm actually exists).

42. Plaintiff is entitled to at least $500 per text message.

43. Further, because Defendant's conduct was so egregious and apparently knowing/willful, Plaintiff is entitled to $1,500 per text message.

## **FIRST CAUSE OF ACTION**

**Violation of 47 U.S.C. § 227**

44. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45. Defendant sent text messages to Plaintiff's cellular telephone without his consent.

46. These text messages continued after Plaintiff asked Defendant on numerous occasions to stop.

47. These text messages were all sent using equipment that had the capacity to store telephone numbers to be called or messaged, using a random or sequential number generator, and/or without human intervention.

48. Defendant has therefore violated 47 U.S.C. § 227(b)(1)(A)(iii).

49. As a result of Defendant's unlawful conduct, Plaintiff is entitled to a minimum of $500 in damages for each such violation.

50. Should the Court determine that Defendant's conduct was willful and/or knowing, Plaintiff would be entitled to up to $1,500 per call, pursuant to 47 U.S.C. § 227(b)(3).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bradley La Force prays for the following relief:

A. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227;

B. An award of injunctive and other equitable relief as necessary, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

C. An award of statutory damages

D.  An award of treble damages; and

E.  Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** September 1, 2017        **MARSHALL LAW FIRM**


By: /s/ Chuck Marshall
  Chuck Marshall
  One of Plaintiff's Attorneys

Chuck Marshall
**MARSHALL LAW FIRM**
2121 N. California Blvd., Ste. 290
Walnut Creek, CA 94596
Phone: (925) 575-7105
Fax: (925) 575-7105

Jeremy M. Glapion
(*Pro Hac Vice* to be submitted)
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: (732) 455-9737
Fax: (732) 709-5150