Eric J. Troutman (SBN 229263)
troutman.eric@dorsey.com
Artin Betpera (SBN 244477)
betpera.artin@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Telephone:  (714) 800-1400
Facsimile:  (714) 800-1499

Attorneys for Defendant
GOSMITH, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY LA FORCE, | CASE NO:  4:17-CV-05101-YGR |
| Plaintiff, | Assigned to the Hon. Yvonne Gonzalez Rogers |
| v. | **DEFENDANT GOSMITH, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| GOSMITH, INC., and DOES 1-25, | *[Filed concurrently with Declarations of Darwin Widjaja and Artin Betpera; and [Proposed] Order]* |
| Defendants. | Date:  December 12, 2017<br>Time:  2:00 p.m.<br>Courtroom:  1, Fourth Floor |
| | Complaint Filed:  September 1, 2017<br>Trial Date:  Not yet set. |

/ / /

/ / /

/ / /

**TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 12, 2017 at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom 1, Fourth Floor of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Defendant GoSmith, Inc. ("GoSmith") will and hereby does move the Court for an order compelling arbitration of this matter.

Through this motion, GoSmith seeks an order pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2-4, compelling Plaintiff Bradley La Force ("Plaintiff") to arbitrate his claims against GoSmith for alleged violations of the Telephone Consumer Protection Act ("TCPA"), in accordance with the terms of an arbitration agreement entered into between Plaintiff and GoSmith which encompasses Plaintiff's TCPA claims, and staying this action pending the completion of arbitration proceedings.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declarations of Darwin Widjaja and Artin Betpera, the entire record in this action, and any further papers, evidence and arguments presented by counsel at the hearing on this motion.

DATED:  October 20, 2017

DORSEY & WHITNEY LLP

By:   _/s/ Eric J. Troutman_
  Eric J. Troutman
  Artin Betpera
  Attorneys for Defendant
  GOSMITH, INC.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL BACKGROUND .................................................................... 1

    A.     Plaintiff Created a GoSmith Account ............................................ 1

    B.     Plaintiff Agreed to Arbitrate His Claims ...................................... 2

    C.     Plaintiff Violated the Terms of Use and Filed Suit........................ 4

III.   THE COURT SHOULD ORDER PLAINTIFF TO ARBITRATE HIS CLAIMS ........... 4

    A.     The FAA Applies to the Arbitration Agreement............................ 4

    B.     This Dispute is Subject to a Binding Arbitration Agreement ................................ 5

        1.     A Written Agreement to Arbitrate Exists Between Plaintiff and GoSmith ....................................................... 5

            a.     GoSmith Provided Reasonable Notice of the Terms of Use.......... 7

            b.     Plaintiff Assented to the Terms of Use ........................... 8

            c.     The Arbitration Agreement in Supported by Consideration ......... 10

        2.     Plaintiff's Claims Are Covered by the Arbitration Agreement ............... 11

IV.    ANY DISPUTES OVER ARBITABILITY MUST BE DECIDED BY THE ARBITRATOR ........................................................................................ 13

V.     THE ACTION SHOULD BE STAYED PENDING THE COMPLETION OF ARBITRATION....................................................................................... 13

VI.    IF THE COURT FINDS ARBITRATION CANNOT BE COMPELLED AT THIS TIME, IT SHOULD STAY THE ACTION EXCEPT TO ALLOW LIMITED DISCOVERY, ADDITIONAL BRIEFING, AND IF NECESSARY A LIMITED TRIAL ON THE ISSUE OF ARBITRABILITY ........................................... 14

VII.   CONCLUSION ....................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013) ...........................................................................................4

*AT&T Techs. v. Communs. Workers of Am.*,
  475 U.S. 643 (1986) .........................................................................................12, 13

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ..............................................................................13

*Chamberlain v. LG Elecs. U.S.A.*, Inc., No. CV 17-2046-MWF (PLAx), 2017 U.S. Dist.
  LEXIS 117968 (C.D. Cal. June 29, 2017) ...........................................................10

*Circuit City Stores v. Adams*,
  279 F.3d 889 (9th Cir. 2002)...................................................................................4

*Citizens Bank v. Alfabco, Inc.*,
  539 U.S. 52 .............................................................................................................5

*Cordas v. Uber Techs., Inc.*,
  228 F. Supp. 3d 985 (N.D. Cal. 2017) .................................................................8, 9

*Crawford v. Beachbody, LLC*,
  No. 14cv1583-GPC(KSC), 2014 U.S. Dist. LEXIS 156658 (S.D. Cal. Nov. 5, 2014) .............6, 8, 9

*Cullinane v. Uber Techs., Inc.*,
  No. 14-14750-DPW, 2016 U.S. Dist. LEXIS 89540 (D. Mass. July 11, 2016) ................................7

*DeVries v. Experian Info. Sols., Inc.*,
  No. 16-cv-02953-WHO, 2017 U.S. Dist. LEXIS 26471 (N.D. Cal. Feb. 24, 2017) ........................8

*Diversified Roofing Corp. v. Pulte Home Corp.*,
  No. CV12-1880 PHX DGC, 2012 U.S. Dist. LEXIS 178685 (D. Ariz. Dec. 17,
  2012) .....................................................................................................................11

*Estep v. World Fin. Corp.*,
  735 F. Supp. 2d 1028 (C.D. Ill. 2010) ...................................................................11

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..............................................................6, 7

*Fagerstrom v. Amazon.com, Inc.*,
  141 F. Supp. 3d 1051 (S.D. Cal. 2015) ...................................................................7

*Felland v. Clifton*,
  No. 10-cv-664-slc, 2013 U.S. Dist. LEXIS 100197 (W.D. Wis. 2013)...........................................11

*First Options of Chi., Inc. v. Kaplan,*
514 U.S. 938 (1995).............................................................................................................6

*Golden Eagle Ins. Co. v. Foremost Ins. Co.,*
20 Cal. App. 4th 1372 (Cal. Ct. App. 1993) ...................................................................9, 10

*Great N. R. Co. v. Melton,*
193 F.2d 729 (9th Cir. 1951)...............................................................................................11

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.,*
716 F.3d 764 (3d Cir. 2013).................................................................................................14

*Harris v. TAP Worldwide, LLC,*
248 Cal. App. 4th 373 (Cal. Ct. App. 2016) ....................................................................9, 10

*Hawkins v. Aid Ass'n for Lutherans,*
338 F.3d 801 (7th Cir. 2003)...............................................................................................11

*Hendrix v. Branton,*
No. 94-35172, No. 94-35264, 1994 U.S. App. LEXIS 29249 (9th Cir. 1994) ...............14

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002) ................................................................................................................5

*Khraibut v. Chahal,*
No. C15-04463 CRB, 2016 U.S. Dist. LEXIS 35514 (N.D. Cal. Mar. 18, 2016) ...........11

*Knutson v. Sirius XM Radio Inc.,*
771 F.3d 559 (9th Cir. 2014).................................................................................................8

*Lowden v. T-Mobile USA, Inc.,*
512 F.3d 1213 (9th Cir. 2008)...............................................................................................5

*Lowen v. Lyft, Inc.,*
129 F. Supp. 3d 945 (N.D. Cal. Sept. 2015) ......................................................................12

*Metter v. Uber Techs., Inc.,*
No. 16-cv-06652-RS, 2017 U.S. Dist. LEXIS 58481 (N.D. Cal. Apr. 17, 2017)..............7

*Mortensen v. Bresnan Commons., LLC,*
722 F.3d 1151 (9th Cir. 2013)...............................................................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ................................................................................................................11

*Moule v. UPS Co.,*
No. 1:16-cv-00102-JLT, 2016 U.S. Dist. LEXIS 88270 (E.D. Cal. July 7, 2016) ............5

*Nevarez v. Forty Niners Football Co.,*
No. 16-cv-07013, 2017 U.S. Dist. LEXIS 131208 (N.D. Cal. Aug. 15, 2017) ................12

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014).................................................................5, 6, 7

*United States ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999)........................................................................6

*PacifiCare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003).....................................................................................5

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010)......................................................................................13

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999)......................................................................12

*Starke v. Gilt Groupe, Inc.*,
  No. 13 Civ. 5497 (LLS), 2014 U.S. Dist. LEXIS 58006 (S.D.N.Y. Apr. 24, 2014) .........................9

*Tompkins v. 23andMe, Inc.*,
  No. 5:13-cv-05682-LHK, 2014 U.S. Dist. LEXIS 88068 (N.D. Cal. June 25, 2014) .....................11

*Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*,
  527 F.3d 1045 (10th Cir. 2008)....................................................................5

*Winters v. AT&T Mobility Servs., LLC*,
  No. 4:17-cv-04053-SLD-JEH, 2017 U.S. Dist. LEXIS 105804 (C.D. Ill. Jul. 2017)....................10

**Statutes**

9 U.S.C. § 2 ...............................................................................................4, 5

9 U.S.C. § 3 ...............................................................................................4, 13

9 U.S.C. § 4 ...............................................................................................4, 14

Cal. Civ. Code § 1584 ..............................................................................9, 10

## I.    <u>INTRODUCTION</u>

Plaintiff Bradley LaForce ("Plaintiff") entered into a binding contract with GoSmith, Inc. ("GoSmith") under which he agreed to arbitrate the claims he has asserted in this lawsuit.  He has refused to honor his contractual obligations, and the Court should therefore compel arbitration and stay this action pending completion of arbitration.

GoSmith offers a nationwide online marketplace that connects homeowners seeking home improvement services with service professionals in their local area.  On October 13, 2015, Plaintiff registered with GoSmith, and accessed the business services provided by GoSmith for home repair service professionals, which include job leads tailored to Plaintiff's specific trade and geographic location.  By registering, Plaintiff was allowed to access and did access, tools which allowed Plaintiff to submit bids and set appointments with homeowners.  As part of the enrollment process, Plaintiff agreed to be bound by GoSmith's Terms of Use, which includes an arbitration agreement.

Plaintiff has ignored his agreement with GoSmith and has filed a Complaint against GoSmith in which he alleges that text messages allegedly sent to him by GoSmith in connection with its services violated the Telephone Consumer Protection Act ("TCPA").  Those claims fall squarely within the arbitration agreement.  The Federal Arbitration Act, and binding U.S. Supreme Court and Ninth Circuit precedent require the enforcement of the arbitration agreement.  As discussed below, the Court should therefore compel Plaintiff to arbitrate his claims.

## II.    <u>FACTUAL BACKGROUND</u>

### A.    **Plaintiff Created a GoSmith Account**

GoSmith provides an online, nationwide home improvement marketplace for consumers and service professionals.  Declaration of Darwin Widjaja in Support of Motion to Compel Arbitration ("Widjaja Dec."), ¶ 3.  Upon completing the online registration process, consumers may use GoSmith's website to submit a request for quotes on home improvement projects from service professionals in their local area.  GoSmith will then notify local service professionals of the consumer's job request.  *Id*. at ¶ 4.  Through the GoSmith website, service professionals may respond to the job notification by communicating a quote or bid to the consumer, and setting up appointments.

1    *Ibid.* In order to access these online requests for quotes, and set up appointments, service professionals

2    must register with GoSmith and accept its Terms of Use. *Id.* at ¶¶ 4-5.

3    GoSmith's records confirm that Plaintiff Bradley La Force of Holden & La Force, Inc.

4    registered an account online with GoSmith on October 13, 2015. *Id.* at ¶¶ 6-9. Before Plaintiff could

5    access job postings on GoSmith's website, he was required to complete the registration form, and click

6    the web button stating "See Job Matches". *Id.* at ¶¶ 7-9 Ex. C. A Notice was placed immediately

7    below the "See Job Matches" button next to a checked box that may be toggled by the user which

8    states "I have read and agree to the terms & privacy policy". *Id.* at ¶ 7, Ex. C. The box must remain

9    checked in order for the user to complete the registration process. *Ibid.* Both of GoSmith's Terms of

10   Use and Privacy Policy are accessible to the professional from this screen via a hyperlink. *Id.* at ¶ 7,

11   Ex. C. Clicking on the "terms" link will take the user to a screen which displays a copy of GoSmith's

12   Terms of Use (the "Terms of Use"). *Id.* at ¶ 7, Ex. A, C. Clicking on the "privacy policy" link will

13   take the user to a screen which displays a copy of GoSmith's Privacy Policy (the "Privacy Policy").

14   *Id.* at ¶ 7, Ex. B, C.

15   Plaintiff filled out the information required on the one-page registration form, then clicked "See

16   Job Matches," to complete his registration. *Ibid.* He permitted the box next to the notice "I have read

17   and agree to the terms & privacy policy" to remain checked. *Ibid.* Under GoSmith's registration

18   process, Plaintiff could not have registered and created an account *without agreeing to GoSmith's*

19   *Terms of Use, including the Arbitration Agreement. Ibid.*

20   After Plaintiff completed his registration, he was "navigated" to his GoSmith account

21   dashboard. There, he confirmed and/or updated information relating to his business (i.e. business

22   name, contact person, contact information, etc.) *Id.* at ¶ 10. GoSmith then provided Plaintiff with

23   access to a list of job leads populated on his account dashboard based on the preferences he selected

24   during his registration process. *Id.* at ¶ 10, 14.

25   **B.    Plaintiff Agreed to Arbitrate His Claims**

26   Plaintiff completed all steps necessary to register for GoSmith's services, and agreed to

27   GoSmith's Terms of Use. *Id.* at ¶¶ 7-9. Thereafter, Plaintiff utilized GoSmith's website and services,

28

1  including by requesting job leads within a 20 mile radius of his location, and accessing and/or viewing

2  job leads provided by GoSmith in response to his request.  *Id*. at ¶¶ 10-14.

3           The Terms of Use in effect at the time Plaintiff completed his GoSmith registration provide

4  under the heading "Acknowledgement and Acceptance" that Plaintiff's use of GoSmith's website and

5  services are "conditioned upon your acceptance without modification, of the following terms,

6  conditions and notices."  *Id*. at Ex. A at Page 1.  The subject matter of the **Terms of Use** covers

7  GoSmith's provision of the above-described services, including the submission of bid requests by

8  consumers through GoSmith's website, job notifications provided by GoSmith to service professionals,

9  and the process by which consumers and potential service professionals may communicate amongst

10  themselves in order to set up appointments through the GoSmith website.  *Id*. at Ex. A. at Pages 1-2.

11  The GoSmith **Privacy Policy**, which is expressly incorporated into the Terms of Use, describes the

12  manner in which GoSmith will provide job lead information to service professionals, including by

13  SMS (text) messaging, and e-mail.  *Id*. at Ex. A at p. 1-2 (stating "This Agreement also includes

14  Smith's Privacy Policy[.]); Ex. B at p. 1-2 (describing the manner in which GoSmith will send service

15  professionals job notifications, including via SMS messages).

16           The GoSmith Terms of Use contain an arbitration provision (the "Arbitration Agreement")

17  under the section "**DISPUTE RESOLUTION**".  *Id*. at Ex. A. at Page 12 (emphasis original).  The

18  Arbitration Agreement provides in relevant part that:

19           At the sole option of Smith [doing business as GoSmith], any claim,
20           dispute or controversy arising out of, relating to or concerning in any
             way the Agreement or use of the Website shall be resolved by binding
21           arbitration administered by the American Arbitration Association
             ("AAA") under its commercial arbitration rules. The decisions of the
22           arbitrators shall be binding and conclusive upon all parties involved, and
23           judgment upon any arbitration award may be entered by any court
             having competent jurisdiction.

24           *Ibid*.

25  The Arbitration Agreement further states:

26           IF ARBITRATION IS CHOSEN BY Smith WITH RESPECT TO A
27           CLAIM, YOU WILL NOT HAVE THE RIGHT TO LITIGATE THE
             CLAIM IN COURT, HAVE A JURY TRIAL, OR ENGAGE IN PRE-
28           ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE

AAA CODE OF PROCEDURES. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE IN ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

*Ibid.* (capitalization in original).

**C.      Plaintiff Violated the Terms of Use and Filed Suit**

In contravention of the Arbitration Agreement with GoSmith, Plaintiff filed suit against it on September 1, 2017.  See Complaint, Doc. No. 1.  Plaintiff alleges that GoSmith violated the TCPA by sending unsolicited text messages to Plaintiff's cell phone about job leads.  *Id*. at ¶¶ 9, 27.

On October 12, 2017, GoSmith exercised its right to arbitration by conveying an arbitration demand to Plaintiff through his counsel.  Declaration of Artin Betpera at ¶ 3.  The arbitration demand was rejected by Plaintiff.  *Id*. at ¶ 4.

Because Plaintiff has filed this action in violation of the Arbitration Agreement contained in the Terms of Use, and refuses to arbitrate the dispute, GoSmith respectfully requests the Court to stay the action pending arbitration, for the reasons set forth herein.

**III.     THE COURT SHOULD ORDER PLAINTIFF TO ARBITRATE HIS CLAIMS**

The Court should order Plaintiff to arbitrate his claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4 because Plaintiff entered into a binding, enforceable arbitration agreement in which he expressly waived his right to pursue those claims in court.

**A.      The FAA Applies to the Arbitration Agreement**

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Act "has been interpreted to embody a liberal federal policy favoring arbitration."  *Mortensen v. Bresnan Commons., LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (internal quotation marks and citation omitted); *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2307 (2013) (courts must "rigorously enforce arbitration agreements according to their terms.").  It requires courts to apply "a federal common law of arbitrability which preempts state law disfavoring arbitration."  *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (internal citation omitted).

The FAA applies to contracts "evidencing a transaction involving interstate commerce."  9 U.S.C §2.  The statute "provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause."  *Citizens Bank v. Alfabco, Inc.*, 539 U.S. 52, 56.  "Congress Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control."  *Ibid*.  (internal quotations marks omitted).

GoSmith is located in California and provides its services across the United States.  See Widjaja Dec., ¶ 3.  The underlying transactions at issue involve the use of the Internet and other communication technologies to transmit home improvement job notifications or potential job leads to independent service professionals across the United States. *See Id*. at ¶¶ 3-4.  This is activity sufficient to meet the "involving commerce" requirement under the FAA.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (applying the FAA to a dispute involving internet commerce); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1054 (10th Cir. 2008) ("the Internet is generally an instrumentality of interstate commerce"); *Moule v. UPS Co.*, No. 1:16-cv-00102-JLT, 2016 U.S. Dist. LEXIS 88270, at *14 (E.D. Cal. July 7, 2016) (same); *Citizens Bank*, supra (finding requisite commerce for FAA coverage even when individual transaction did not have "any specific effect upon interstate commerce" because the defendant engaged in business of the type at issue in multiple states) (internal quotation marks and citation omitted).

The FAA controls.  In accordance with that Act, the GoSmith arbitration agreement should be enforced here.

**B.     This Dispute is Subject to a Binding Arbitration Agreement**

The FAA requires courts to compel arbitration where: (1) there is a valid agreement to arbitrate between the parties; and (2) the agreement covers the dispute.  *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).  Both elements are met here.

**1.     A Written Agreement to Arbitrate Exists Between Plaintiff and GoSmith**

Courts apply "state-law principals that govern the formation of contracts to determine whether a valid arbitration agreement exists."  *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir.

2008) (citing to *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  "Under California law, the essential elements for a contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration."[1]  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (internal citations and quotations omitted).

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principals of contract.  The touchstone for all contracts, whether Internet digital or old school paper is mutual manifestation of assent, whether by written or spoken word or conduct."  *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164 (N.D. Cal. 2016) (internal citations omitted).  In the context of internet transactions, "the dispositive questions are (1) did the offeror provide reasonable notice of the proposed terms; and (2) did the offeree unambiguously manifest assent to them?"  *Ibid.* (citing to *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014)).

"To answer those questions for contracts formed on the Internet, our Circuit has settled on an analytical framework that puts 'clickwrap' agreements at one end of the enforceability spectrum and 'browsewrap' agreements at the other."  *Id.* at 1164-65.  With a "pure" clickwrap agreement, "the user is presented with a list of terms and conditions of use before being asked to agree to them," and manifests consent by clicking on an "I agree box."  *Id.* at 1165 (internal citations and quotations omitted).  With a "pure" browsewrap agreement, "the website's terms and conditions of use are generally posted on the website via hyperlink at the bottom of the screen," and will contain a notice that "by merely using," the website, "the user is agreeing to and is bound by the site's terms of service."  *Ibid.*  Within this spectrum, courts have found enforceable "hybrid clickwrap/browsewrap," agreements "where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under," the button used to complete an action, order, or registration on a website (i.e. "I Accept", "Sign Up", "Place Order", etc.).  *See e.g. Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 U.S. Dist. LEXIS 156658, at *7-8 (S.D. Cal. Nov. 5, 2014).

---

[1] There is no dispute here that Plaintiff, an individual, and GoSmith, an entity, both had the capacity to enter into a contract, nor does Plaintiff assert the Terms of Use or Privacy Policy are somehow void due to illegality.  This section of GoSmith's brief therefore focuses on the dispositive issues discussed below concerning notice, assent, and consideration.

These labels are not dispositive; they are merely analytical guideposts, and "there is no per se rule of validity or invalidity on either end," of the clickwrap/browsewrap spectrum.  *In re Facebook,* supra; *see also Cullinane v. Uber Techs., Inc.*, No. 14-14750-DPW, 2016 U.S. Dist. LEXIS 89540, at *17 (D. Mass. July 11, 2016) ("analysis of the Agreement's validity and enforceability turns more on customary and established principals of contract law than on newly-minted terms of classification."). The Ninth Circuit has simply "recognized that the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable." *Ibid*.  Importantly, a binding contract is formed so long as the key ingredients of reasonable notice and assent are met. *Id*. at 1164.  And the facts here establish that GoSmith provided reasonable notice of its Term of Use and Privacy Policy, and Plaintiff unambiguously manifested assent to them.

### a.   GoSmith Provided Reasonable Notice of the Terms of Use

In determining whether a website provides reasonable notice of terms, courts take a holistic approach, and consider a number of factors, including "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design." *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1177 (9th Cir. 2014); *see also Metter v. Uber Techs., Inc.*, No. 16-cv-06652-RS, 2017 U.S. Dist. LEXIS 58481, at *7-8 (N.D. Cal. Apr. 17, 2017) (examining "font, size, color, and placement of [notice of terms] relative to the 'REGISTER' button.").

Here, the design and layout of the GoSmith registration screen provides users with reasonable notice that by clicking through to register, they are agreeing to GoSmith's Terms of Use.  As a starting point, the design of the registration page is minimalistic.  Widjaja Dec., Ex. C.  There are about eight fields of text displayed on the screen, one of which includes the notice and acknowledgement of the Terms of Use and Privacy Policy.  *Ibid*.  This part of the registration page therefore occupies a noticeable portion of the total contents displayed on the screen, is clearly visible, and in no way hidden or obscured.

Additionally, the color of the text used in the notice contrasts with the background, and is perfectly visible.  *Ibid*.  The user's attention is also called to the hyperlink to the Terms of Use and Privacy Policy with blue contrasting text.  *See Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal. 2015) (hyperlink to terms in "blue-colored font" sufficient to provide "reasonable

notice").  Once a user clicks on the terms hyperlink, they are taken to a full copy of the GoSmith Terms of Use, which conspicuously states on the first page under the bold heading "Acknowledgement and Acceptance" that their use of GoSmith's website or services constitutes their agreement to the Terms of Use.  *See* Terms of Use attached to the Widjaja Dec. as Ex. A, at p. 1.  The notice provided by GoSmith of its Terms of Use is conspicuously placed immediately below the "See More Job Matches" button, which users must click to complete their registration and obtain requested job leads.  *See e.g. DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 U.S. Dist. LEXIS 26471, at *17-18 (N.D. Cal. Feb. 24, 2017) ("the relevant language's proximity to the 'Submit Secure Order' button and font size adequately call a reasonably prudent user's attention to the existence of the Terms and Conditions.")

Finally, the statement "I have read agree to the terms & privacy policy" appears immediately next to a checked box.  Plaintiff alleges in his complaint that the display of this checked box is somehow "deceptive".  Complaint, Doc. No. 1, ¶ 25.  It is not.  To the contrary, the checked box conveys the clear message to the user that they are required and expected to read and agree to the Terms of Use and Privacy Policy before proceeding further.  Widjaja Dec., Ex. C.  If a user does not wish to so agree, they are free to uncheck the box.  Widjaja Dec., ¶ 7.  Plaintiff did not do so here.  *Id.* at ¶ 9.

For all these reasons, GoSmith's one-page registration screen provides reasonable notice to users that by registering and using its service, they are assenting to the Terms of Use and Privacy Policy.

### b.  Plaintiff Assented to the Terms of Use

"Mutual assent may be manifested by written or spoken words, or by conduct, and acceptance of contract terms may be implied through action or inaction."  *DeVries*, supra at *12 (citing to *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).  Under California law, assent may be manifested through a variety of acts.  Assent has been found where an Internet user proceeds to complete an internet order, or signs up for an account after being provided reasonable notice of the website's terms of use.  *See e.g. Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017); *Crawford*, 2014 U.S. Dist. LEXIS 156658, at *7-8.  Assent is also manifested where an offeree

accepts the consideration or benefits provided under a contract.  *See* Cal. Civ. Code § 1584 ("[A]cceptance of the consideration offered with a proposal, is an acceptance of the proposal."); *see also Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 384 (Cal. Ct. App. 2016) ("assent to an offer can occur either by way of performance under the contract or acceptance of the consideration."). And finally, assent has been found through an offeree's inaction, such as failure to opt out of an agreement after being provided notice of it.  *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1387, (Cal. Ct. App. 1993) ("silence or inaction operates as an acceptance where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.") (internal quotation marks omitted).  Plaintiff manifested assent in each of these ways.

First, Plaintiff manifested assent by completing his registration for a GoSmith account and requesting job leads after being providing reasonable notice that, by doing so, he was agreeing to GoSmith's Terms of Use and Privacy Policy.  Plaintiff did not agree to the Terms of Use simply by navigating to GoSmith's website.  *See Cordas*, supra ("[t]he agreement at issue is not a browsewrap agreement; an Uber user is not told he has assented to Uber's terms simply by passively viewing one screen of the Uber app.")  He visited GoSmith's registration page, filled out his registration information, clicked the "See Job Matches" button appearing immediately above the notice "I have read and agree to the terms & privacy policy", then proceeded to utilize the portions of GoSmith's website reserved only for service professionals who have registered and accepted the Terms of Use and Privacy Policy.  Widjaja Dec., ¶¶ 9-14.

These affirmative actions taken by Plaintiff bound him to these agreements.  *See Cordas*, supra (contract formed where user affirmatively assented to terms and conditions by completing registration on a page displaying a notice that by creating an account he was accepting Uber's terms and conditions); *see also Crawford*, 2014 U.S. Dist. LEXIS 156658, at *7-8; *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497 (LLS), 2014 U.S. Dist. LEXIS 58006, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration provision in hyperlinked Terms of Use; plaintiff's "decision to click the 'Shop Now' button represents his assent to [the Terms].").  Simply put, if Plaintiff had not created an account, he would not have agreed to GoSmith's Term of Use or Privacy Policy.  *Cordas*, supra. ("If [the user] does not

create an account, he does not agree to Uber's terms and conditions.  By creating an account on the Uber app, [the user] affirmatively acknowledged the agreement and is bound by its terms.") (internal quotation marks omitted).  And because Plaintiff had been provided with reasonable notice of GoSmith's Terms of Use and Privacy Policy before taking these actions, a binding contract was formed.

Next, Plaintiff also manifested assent by accepting the job leads he requested during the registration process.  Cal. Civ. Code § 1584; *Harris*, supra.  This was the specific service Plaintiff had requested GoSmith provide to him during the registration process: job leads within a 20 mile radius of his location.  Widjaja Dec., ¶ 9.  In exchange for Plaintiff's agreement to the Terms of Use and Privacy Policy, GoSmith provided Plaintiff with the benefit of these job leads, and Plaintiff accepted them. Widjaja Dec., ¶¶ 9-10.  Plaintiff's acceptance of services he specifically requested from GoSmith therefore bound him to the Terms of Use and Privacy Policy.  Cal. Civ. Code § 1584; *Harris*, supra.

Finally, and as set forth above, GoSmith's registration process provided Plaintiff with the ability to uncheck the box next to the statement "I have read and agree to the terms & privacy policy," if he did not wish to agree to these documents.  Plaintiff elected not to do so, and his inaction is treated under the law as manifestation of assent to GoSmith's Terms of Use and Privacy Policy.  *See Golden Eagle*, supra; *see also Chamberlain v. LG Elecs. U.S.A.*, Inc., No. CV 17-2046-MWF (PLAx), 2017 U.S. Dist. LEXIS 117968, at *14 (C.D. Cal. June 29, 2017) (failure to opt-out of arbitration agreement constituted assent where plaintiff was "on notice of the terms and conditions of the agreement[.]"); *Winters v. AT&T Mobility Servs., LLC*, No. 4:17-cv-04053-SLD-JEH, 2017 U.S. Dist. LEXIS 105804, at *13 (C.D. Ill. Jul. 2017) ("Although [a] contract require[s] signatories to 'opt out' rather than, as is traditionally done with contracts, [opt] in, such a device is no impediment to the creation of a valid contract, even though it is plainly crafted to channel more [users] into arbitration.").

For these reasons, GoSmith's registration process yielded a binding contract between Plaintiff and GoSmith.

### c.  The Arbitration Agreement in Supported by Consideration

Plaintiff's acceptance of the Terms of Use is supported by consideration.  "Under California contract law . . . a written instrument is presumptive evidence of consideration.  Further, all the law

10

requires for sufficient consideration is the proverbial peppercorn." *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 U.S. Dist. LEXIS 88068, at *28 (N.D. Cal. June 25, 2014) (internal quotation marks and citations omitted); *see also Khraibut v. Chahal*, No. C15-04463 CRB, 2016 U.S. Dist. LEXIS 35514, at *21-22 (N.D. Cal. Mar. 18, 2016) (same).

After registering for an account and accepting GoSmith's Terms of Use, Plaintiff was provided access to restricted portions of GoSmith's website for service professionals that included: (1) job leads tailored to Plaintiff's business and geographic location he confirmed during the registration process; and (2) the ability to submit bids on jobs to consumers, and the ability to communicate with them through the GoSmith website. Widjaja Dec., ¶ 9-14. Plaintiff was provided these clear benefits in exchange for his acceptance of the Terms of Use. *Ibid.* The Terms of Use and Arbitration Agreement contained therein are therefore supported by adequate consideration.

Importantly, arbitration provisions do not require separate consideration so long as they are part of an underlying contractual agreement supported by consideration. *Great N. R. Co. v. Melton*, 193 F.2d 729, 733 (9th Cir. 1951) ("the consideration of the contract itself is a consideration for every provision in it"); *Diversified Roofing Corp. v. Pulte Home Corp.*, No. CV12-1880 PHX DGC, 2012 U.S. Dist. LEXIS 178685, at *14 (D. Ariz. Dec. 17, 2012) (arbitration provision did not require separate consideration because "consideration of the contract itself is a consideration for every provision in it."); s*ee also Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 808 (7th Cir. 2003); *Felland v. Clifton*, No. 10-cv-664-slc, 2013 U.S. Dist. LEXIS 100197, at *21-23 (W.D. Wis. 2013) (collecting cases); *Estep v. World Fin. Corp.*, 735 F. Supp. 2d 1028, 1033 (C.D. Ill. 2010) (holding that no separate consideration for arbitration agreement is required). Thus, the Arbitration Agreement is binding and enforceable because it is contained within an underlying contractual agreement – the Terms of Use – which is itself supported by consideration.

## 2.   Plaintiff's Claims Are Covered by the Arbitration Agreement

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983);

1   *Nevarez v. Forty Niners Football Co.*, No. 16-CV-07013, 2017 U.S. Dist. LEXIS 131208, at *14 (N.D.

2   Cal. Aug. 15, 2017).  Thus, "an order to arbitrate the particular grievance should not be denied unless it

3   may be said with positive assurance that the arbitration clause is not susceptible of an interpretation

4   that covers the asserted dispute.  *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650

5   (1986).

6           The Arbitration Agreement here is broadly worded, and requires Plaintiff to arbitrate "any

7   claim, dispute or controversy arising out of, relating to or concerning in any way the [Terms of Use] or

8   use of the Website."  Arbitration Agreement at page 12 of the Terms of Use, Widjaja Dec., Ex. A.

9   "The phrase 'arising out of or relating to' in an arbitration agreement must be construed broadly, and

10  the factual allegations at issue need only 'touch matters' covered by the contract containing the

11  arbitration clause and all doubts are to be resolved in favor of arbitration."  *Lowen v. Lyft, Inc*., 129

12  F.Supp.3d 945, 965-66 (N.D. Cal. Sept. 2015) (citing to and quoting *Simula, Inc. v. Autoliv, Inc.*, 175

13  F.3d 716, 721 (9th Cir. 1999)).

14          Here, Plaintiff alleges GoSmith violated the TCPA by sending him unsolicited text messages

15  that informed him of job leads and/or in connection with the services GoSmith provides.  *See*

16  Complaint, Doc No. 1, ¶¶ 9-18.  These are the very services that are encompassed by, and delineated in

17  the Terms of Use, including the process by which consumers may submit job requests on GoSmith's

18  website, GoSmith's communication of job requests to local service professionals, and the facilitation

19  of communication between consumers and service professionals via the GoSmith website.  Widjaja

20  Dec., Ex. A, p. 1.  Additionally, the Privacy Policy, which is expressly incorporated into the Terms of

21  Use, further covers the use of SMS (text) messaging technology to transmit job leads and other

22  information to service professionals.  *Id*. at Ex. A at p. 1 (stating "This Agreement also includes

23  Smith's Privacy Policy[.]); Ex. B at p. 1-2 (describing the manner in which GoSmith will send service

24  professionals job notifications and other information, including via SMS messages).  Because Plaintiff

25  alleges that the texts at issue were sent in connection with the very services offered by GoSmith, and

26  which are delineated in the Terms of Use and Privacy Policy accepted by Plaintiff, his claims fall

27  within the ambit of Arbitration Agreement.

28

1

2

## IV.   ANY DISPUTES OVER ARBITABILITY MUST BE DECIDED BY THE ARBITRATOR

3

4

5

6

7

8

9

10

11

12

13

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986).  However, the parties are free to delegate issues of arbitrability to the arbitrator, and if they do, the Court must leave those issues for the arbitrator to decide.  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) ("A court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator.").  Importantly, under Ninth Circuit precedent "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id*. at 1131.

14

15

16

17

18

19

Here, the Arbitration Agreement provides that disputes between Plaintiff and GoSmith "shall be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its commercial arbitration rules."  Widjaja Dec., Ex. A at Page 12.  This language constitutes evidence of the parties' "clear and unmistakable intent to allow the arbitrator to decide the question of arbitrability." *Brennan*, supra.  To the extent, therefore, that the Plaintiff disputes the arbitrability of his claim that dispute must be submitted to the arbitrator for decision.

20

21

## V.   THE ACTION SHOULD BE STAYED PENDING THE COMPLETION OF ARBITRATION

22

23

24

25

Once the District Court finds that the issues in a lawsuit require arbitration, the FAA requires the court to "stay the trial of the action until such arbitration has been had."  9 U.S.C. § 3.  As set forth above, Plaintiff's TCPA claim falls within the scope of the Arbitration Agreement, and must be arbitrated.  Thus, this action should be stayed pending the completion of arbitration.

26

27

28

## VI. IF THE COURT FINDS ARBITRATION CANNOT BE COMPELLED AT THIS TIME, IT SHOULD STAY THE ACTION EXCEPT TO ALLOW LIMITED DISCOVERY, ADDITIONAL BRIEFING, AND IF NECESSARY A LIMITED TRIAL ON THE ISSUE OF ARBITRABILITY

The Third Circuit has laid out a helpful roadmap for courts to follow in resolving disputes over the enforceability of an arbitration agreement:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, *then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.* After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, *the court may then proceed summarily to a trial regarding the making of the arbitration agreement* or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citations omitted)(italics supplied); *see also Hendrix v. Branton*, No. 94-35172, No. 94-35264, 1994 U.S. App. LEXIS 29249, at *4-5 (9th Cir. 1994) (If the court determines that "the making of the arbitration to arbitrate is in issue, it is to proceed summarily to trial of that issue. Normally, this summary trial should occur prior to the resolution of the motion to compel arbitration.") (internal quotation marks and citations omitted).

In the event the Court finds for any reason that arbitration cannot be compelled at this time, it should follow the *Guidotti* road map, and: (1) allow the parties to obtain limited discovery on the question of arbitrability; (2) allow GoSmith to file either a renewed motion to compel arbitration or motion for summary judgment further addressing this question; (3) if denied, proceeding summarily to a trial regarding the making of the arbitration agreement or the failure, neglect or refusal to perform the

14

same; and (4) ordering all other proceedings in this action stayed pending the resolution of the question of arbitrability.

**VII.** **CONCLUSION**

For the reasons set forth above, GoSmith respectfully requests that the Court compel arbitration of Plaintiff's claims, and stay all proceedings pending arbitration.  If for any reason the Court finds that it cannot compel arbitration at this time, GoSmith respectfully requests that it permit limited discovery regarding arbitration, and stay all other proceedings until further briefing, and if necessary a limited trial on the issue of arbitrability is completed.

RESPECTFULLY SUBMITTED this October 20, 2017

DORSEY & WHITNEY LLP

By:  *  /s/ Eric J. Troutman  *
        Eric J. Troutman
        Artin Betpera
        Attorneys for Defendant
        GOSMITH, INC.

NOTICE OF MOTION AND MOTION TO COMPEL; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:17-CV-05101-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

All Case Participants are registered for the USDC CM/ECF System

***Bradley La Force v. GoSmith, Inc., and DOES 1-25***
***Northern District of California Case Number 4:17-cv-05101-YGR***

**DEFENDANT GOSMITH, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**

      I hereby certify that on October 20, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District by using the CM/ECF system.

      Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated:  October 20, 2017          DORSEY & WHITNEY LLP

                    By:   */s/ Eric J. Troutman*
                         Eric J. Troutman